IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KINDRA O'BRYANT, BRIAN FLANDERS and ARTIE PEOPLES, | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | |
| v. | Civil Action No. 17-7752 (JBS-AMD) |
| THE NEW JERSEY DIVISION OF CHILD PROTECTION AND PERMANANCY, et al., | **MEMORANDUM OPINION** |
| Defendants. | |

**SIMANDLE**, District Judge:

Plaintiffs pro se Kindra O'Bryant ("O'Bryant"), Brian Flanders ("Flanders"), and Artie Peoples ("Peoples" and, collectively, "Plaintiffs") filed this 42 U.S.C. § 1983 suit alleging that the New Jersey Division of Child Protection and Permanency ("NJDCPP"), and others, violated their constitutional rights by removing Ms. O'Bryant's three children, Ke.O., Ky.O., and K.F., from their care.[1] [See generally Docket Item 1 ("Compl").] Numerous defendants are named in the suit for their role in the removal and ensuing custody-related hearings, including NJDCPP, various NJDCPP supervisors, caseworkers, and employees, three officers from the Camden County Police

---

[1] Mr. Flanders is the father of one of Ms. O'Bryant's three children, K.F., and Mr. Peoples is Ms. O'Bryant's father and the maternal grandfather of all three children. (Compl. at ¶¶ 19, 21.)

Department ("CCPD"), and unnamed "Does 1-20" (collectively, "Defendants"). (Compl. at ¶¶ 4-14.)

Pending before the Court are three motions filed by Defendants: (1) the motion to dismiss filed by Defendants Sheriff Gilbert "Whip" Wilson, Sheriff Deputy T. Nichols, and Sheriff Deputy Gurkin (collectively, "the CCPD Defendants") pursuant to Fed. R. Civ. P. 12(b)(6) [Docket Item 19]; (2) the motion to dismiss filed by Defendants NJDCPP, Lisa von Pier, Allison Blake, Lisa Capone, Conchita Varga, Bryant Rolls, and Jonathon Garrett (collectively, with Defendant Alicia Ash, "the NJDCPP Defendants") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6); and (3) the motion to dismiss filed by Defendant Alicia Ash pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). [Docket Item 25.] Plaintiffs filed a response brief and exhibits in opposition to the motions to dismiss [Docket Items 26, 27], and Defendants filed reply briefs. [Docket Items 30, 31.] Plaintiffs subsequently filed a sur-reply [Docket Item 35], with leave of the Court. [Docket Item 39.] The Court invited a written update of the status of custody proceedings in the Superior Court [Docket Item 40], to which Deputy Attorney General Haroldson responded [Docket Item 41]; Mr. Peoples [Docket Item 42] and Ms. O'Bryant [Docket Item 43] replied, with

Ms. O'Bryant taking exception to the fairness and lawfulness of the ongoing state court proceedings. The Court finds as follows:[2]

1. **Factual and Procedural Background.** According to the Complaint, on June 6, 2017, NJDCCP received a telephone call from the Early Childhood Development Center School indicating that, when Mr. Flanders dropped Ky.O and Ke.O at school that morning, he appeared to be "upset and agitated." (Compl. at ¶¶ 25, 36.) Upon further investigation, NJDCPP discovered that Mr. Flanders had an "endangering the welfare of child charge, weapons charges, aggravated assault on a police officer charge, [and] warrants for his arrest." (Id. at ¶ 132.)

2. Also on June 6, 2017, Ms. O'Bryant was hospitalized in connection with an incident of self-mutilation and/or attempted suicide due to severe depression. (Id. at ¶¶ 26, 43-46, 51.) Ms. O'Bryant was pregnant with her soon-to-be daughter, K.F., at the

---

[2] The facts alleged are drawn from the Complaint, public court documents, and undisputedly authentic documents upon which Plaintiffs explicitly rely upon in the Complaint. See In re Rockefeller Ctr. Props., Inc., Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999). Because the Complaint is, in large part, predicated upon allegations made against Mr. Flanders, the Verified Complaint in the Child Abuse – Neglect action against Ms. O'Bryant and Mr. Flanders, which Plaintiffs filed as an exhibit in support of their opposition brief [see Docket Item 27], will be considered in connection with the pending motions to dismiss. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document [attached] as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

3

time. (Id. at ¶¶ 26, 75.) Sometime before Ms. O'Bryant was discharged from the hospital on June 7, 2017, she signed an Intake Family Agreement, wherein Ms. O'Bryant agreed that Mr. Flanders would only be permitted around the children after completing a two-week domestic violence program. (Id. at ¶¶ 12, 54-61, 87-89.) Thereafter, Defendant Alicia Ash, an employee of NJDCPP, and another caseworker toured Ms. O'Bryant's home and "noticed that the house had an insect pest problem (roaches, bed bugs)[,] the stove was broke and the house was in need of repairs." (Id. at ¶ 67.)

    3.    On August 15, 2017, Ms. O'Bryant gave birth to K.F. at Cooper Hospital. (Id. at ¶ 75, 122.) The following day, NJDCPP caseworkers arrived at the hospital to discuss with Ms. O'Bryant the Intake Family Agreement she had previously signed. (Id. at ¶¶ 76-78, 81-120.) While at the hospital, one of the NJDCPP caseworkers, Defendant Conchita Varga, asked to interview Ke.O. and Ky.O. (Id. at ¶ 124.) Mr. Peoples, the children's paternal grandfather, refused to permit Vargas to interview the children and attempted to leave the hospital with them. (Id. at ¶ 125.) In response, the Complaint alleges that Defendant Varga summoned Defendant T. Nichols, a Deputy Sheriff with CCPD, who took the children from Mr. Peoples and brought them across the street from the hospital to a NJDCPP office, where it was decided that the children should remain in NJDCPP custody. (Id. at ¶¶ 126,

4

138, 141-42, 147.) After K.F. was cleared for release by the hospital, she too was removed from Plaintiffs' custody by NJDCPP. (Id. at ¶ 159.) Mr. Flanders was subsequently arrested by Defendant T. Nichols at the hospital. (Id. at ¶¶ 144-45.)

4. On August 18, 2017, NJDCPP filed a Verified Complaint for a Child Abuse – Neglect civil action against Ms. O'Bryant and Mr. Flanders in the Superior Court of New Jersey Chancery Division, Family Part, Camden County, Docket No. FN-04-NJS:17144081. [See Docket Item 27 at 8-17.] Because Ms. O'Bryant could not attend a hearing that was to be held that day, the proceedings in the Superior Court were postponed until October 5, 2017. (Compl. at ¶¶ 171, 177.) On October 2, 2017, three days before that hearing was to be held, Plaintiffs filed this Complaint in federal court seeking $10,000,000 in compensatory damages and $50,000,000 in punitive damages. [Docket Item 1.] Thereafter, Defendants filed the motions to dismiss now pending before the Court. [Docket Items 19, 20, 25.]

5. The Court subsequently asked for an update as to the status of the state court proceedings. [Docket Item 40.] According to the NJDCPP Defendants, the state court proceedings are still ongoing, with a permanency hearing having been held before the New Jersey Superior Court on August 10, 2018, and another hearing scheduled for November 2, 2018. [Docket Item 41.] Through these proceedings, NJDDPP "has been working

5

actively with the Plaintiffs to achieve reunification . . . [with] hopes that reunification will occur in approximately six months," and "as part of this process, Plaintiffs have been visiting the children almost daily." [Id.] Plaintiffs acknowledged receipt of the NJDCPP Defendants' letter to the Court and acknowledge that the Superior Court case remains ongoing.[3] [Docket Items 42 & 43.] Accordingly, the Court assumes, for purposes of deciding the pending motions, that the state court proceedings are ongoing, with the next in a series of hearings set for November 2, 2018, as described above.

6. **Standard of Review.** Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a complaint for lack of subject matter jurisdiction. Because federal courts are courts of limited jurisdiction, the party seeking to invoke the court's jurisdiction bears the burden of proving the existence of subject matter jurisdiction. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). Under Fed. R. Civ. P. 12(b)(1), the court's jurisdiction may be challenged either facially (based on the legal sufficiency of the claim) or

---

[3] Notably, Ms. O'Bryant's letter of September 3, 2018 [Docket Item 43] alleges that the state court and Defendants are violating her constitutional rights to due process because she claims there has not been a show-cause hearing, and that the Superior Court has not made sufficient findings pertaining to Social Security benefits under Court Ordered placements described in the NJDCPP's manual, an excerpt of which is attached to her letter. [Id. at 4-6.]

6

factually (based on the sufficiency of a jurisdictional fact). Gould Elecs. v. U.S., 220 F.3d 169, 178 (3d Cir. 2000); see also A.D. v. Haddon Heights Bd. of Educ., 90 F. Supp. 3d 326, 334 (D.N.J. 2015) (explaining the same distinction). On a facial attack, the Court considers only the allegations of the Complaint and documents referenced therein, construing them in the light most favorable to Plaintiff. Pearson v. Chugach Gvt. Svcs. Inc., 669 F. Supp. 2d 467, 469–70 (D. Del. 2009). On a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

7. Under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the Complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the Complaint, the plaintiff may be entitled to relief." Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012) (internal citations omitted). In applying this standard to pro se pleadings and other submissions, as here, the Court must liberally construe the well-pleaded allegations, and draw all

7

reasonable inferences in favor of the pro se litigant. Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339 (3d Cir. 2011); Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009). Despite this liberality, however, a pro se complaint must still "contain sufficient factual matter, accepted as true," to "state a [plausible] claim to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Marley v. Donahue, 133 F. Supp. 3d 706, 714 (D.N.J. 2015) (explaining the same concept).

8. **Discussion.** The Court finds that the Complaint fails to state a claim over which a federal court would have subject matter jurisdiction. Although Plaintiffs have clothed their complaint in the garb of a civil rights action, the Complaint boils down to a dispute over the custody of the three children and the interactions of these Plaintiffs and Defendants in that custody process. Plaintiffs note several times that they were afforded a fact-finding hearing by the Camden Superior Court, which was postponed to October 5, 2017 (Compl. at ¶¶ 171-73), and which was resumed on various dates since then. Plaintiffs' primary grievance against the various Defendants is that their removal decisions, and those of the Superior Court, were simply wrong. For example, Ms. Bryant repeatedly complains that the evidence of child abuse was improperly derived from a closed

case involving Mr. Flanders' five-year-old son and that Defendants removed her children "where there is no reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." (Id. at ¶ 23, see also id. at ¶¶ 30, 76, 91.) Ms. O'Bryant more recently claims that the Superior Court has not followed the correct procedural steps for a show-cause hearing and for determining placement of children. [Docket Item 43.]

9. <u>Lack of Jurisdiction over Domestic Relations Determinations</u>. This Court does not have jurisdiction over determinations of parental rights and child custody, because these are matters within the longstanding exception to federal jurisdiction in matters involving domestic relations of husband and wife, and parent and child. The New Jersey Legislature "adopted comprehensive legislation for the protection and welfare of the children of this State," and child abuse and neglect cases are controlled by Title 9 of the New Jersey Statutes. See <u>New Jersey Div. of Youth and Family Serv. v. M.C. III</u>, 990 A.2d 1097, 1107 (N.J. 2010). New Jersey law makes clear that "the Superior Court, Chancery Division, Family Part has **exclusive original jurisdiction** over noncriminal proceedings under this act alleging the abuse or neglect of a child." N.J.S.A. § 9:6-8.24 (emphasis added). New Jersey law also mandates "[a]ll noncriminal cases involving child abuse" to be

"transferred to [New Jersey family court] from other courts . . . ." N.J.S.A. § 9:6-9.22; see also Cesare v. Cesare, 713 A.2d 390, 399 (N.J. 1998) (noting the "family courts' special jurisdiction and expertise in family matters"). Moreover, appeals from any "final order or decision in a case involving child abuse" under Title 9 are taken to New Jersey appellate courts, not to federal court. N.J.S.A. § 9:6-8.70. Even when a complaint is "drafted in tort, contract, 'or even under the federal constitution,'" if the complaint involves matters of domestic relations, it is generally not within the federal court's jurisdiction. New Jersey Div. of Youth and Family Servs. v. Prown, No. 13-7776, 2014 WL 284457, at *2 (D.N.J. Jan. 24, 2014) (citation omitted).

10. These statutory provisions are consistent with the well-settled general understanding that the "'whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.'" Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992) (quoting In re Burrus, 136 U.S. 586, 593-94 (1890)). To the extent that Plaintiffs seek review of any temporary or permanent child custody or parental rights determinations, this federal court lacks jurisdiction to entertain these claims.

11. Younger Abstention. Even if this Court had federal subject matter jurisdiction over a child custody dispute, which

10

it does not, the doctrine of abstention would bar the present action, since proceedings are still taking place in state court. Plaintiffs can raise their constitutional objections to the state court's procedures in that court, and if dissatisfied with that court's rulings, they may take an appeal within the state court system and, eventually, to the U.S. Supreme Court, if desired. All doctrines of abstention serve two common purposes: "to avoid premature constitutional adjudication in the federal courts," Hull v. Petrillo, 439 F.2d 1184, 1188 (2d Cir. 1971), and "to ensure the proper relationship between the state and the federal judiciary." Crane v. Fauver, 762 F.2d 325, 329 (3d Cir. 1985) (internal citations and quotation omitted). In this case, the Younger doctrine counsels this Court to abstain.

12. The Complaint is not a model of clarity, but at the very least, the allegations indicate that there were removal proceedings pending in New Jersey Superior Court, Family Part, when this case was filed on October 2, 2017. Plaintiffs allege, for example, that the Camden Superior Court held a hearing on August 18, 2017, which Ms. O'Bryant could not attend, and that the proceedings were postponed until October 5, 2017. Moreover, as of September 4, 2018, the state court proceedings are still ongoing, with a permanency hearing having been held before the New Jersey Superior Court on August 10, 2018, and another hearing scheduled for November 2, 2018. [Docket Item 41.]

13. Because Plaintiffs' removal case is still pending before the New Jersey state court, the Younger doctrine bars this Court from simultaneous adjudication of those claims. The Younger doctrine reflects "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982). Under Younger, a federal court should abstain from enjoining state civil proceedings that implicate important state interests, and abstention is warranted when: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. Ocean Grove Camp Meeting Ass'n of United Methodist Church v. Vespa-Papaleo, 339 F. App'x 232, 236 (3d Cir. 2009).

14. All three requirements are satisfied here. First, Plaintiffs' state proceedings are judicial in nature, since removal proceedings are ongoing before the New Jersey Superior Court. See N.J.S.A. § 9:6-8.24.

15. Second, the Complaint implicates important state interests. Issues relating to child custody and parental rights generally fall under the umbrella of "domestic relations," and the Supreme Court has long noted state tribunals' "special

proficiency . . . over the past century and a half in handling issues that arise" in the area. Ankenbrandt, 504 U.S. at 704; see also Marshall v. Marshall, 547 U.S. 293, 307 (2006). Particularly where the question revolves around the status of a domestic relationship (in this case, the custody status of a child and possible placement into foster care), the case implicates "difficult questions of state law bearing on policy questions of substantial public import whose importance transcends the result in the case [] at bar," and is more appropriate for a state court. Ankenbrandt, 504 U.S. at 705-06; see also Mayercheck v. Judges of Pa. Sup. Ct., 395 F. App'x 839, 942 (3d Cir. 2010) (noting that domestic relations exception divests federal courts of jurisdiction over cases involving a decree of child custody); Matusow v. Tans-County Title Agency, LLC, 545 F.3d 241, 245 (3d Cir. 2008) (stating same). The actions of the NJDCPP Defendants and the defendant County law enforcement officers assisting them to gain peaceful custody of the children, at issue in the present Complaint, are totally intertwined with, and at issue in, the Superior Court proceedings.

16. Third, there is no reason why Plaintiffs may not raise their constitutional claims in the ongoing state proceedings. See Ocean Grove Camp Meeting Ass'n of United Methodist Church, 339 F. App'x at 239. ("To satisfy the third prong of Younger, it

is sufficient 'that constitutional claims may be raised in state-court judicial review of the administrative proceeding.'" (quoting Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 629 (1986))).

    17.   Other Defenses. There is grave doubt that the NJDCPP can be sued for money damages in federal court. The NJDCPP is immune from suit in federal court under the Eleventh Amendment of the U.S. Constitution. The Eleventh Amendment immunizes states from suit by private parties in federal court, and the immunity extends to state agencies and departments, or if the named Defendant is an "arm of the state." MCI Telecomm. Corp. v. Bell Atl. Pa., 271 F.3d 491, 503 (3d Cir. 2001). Federal and state courts in New Jersey have long held that the NJDCPP is, "beyond dispute," an "arm of the state" for purposes of sovereign immunity. Izquierdo v. New Jersey, 2014 WL 234186, at *2 (D.N.J. Jan. 21, 2014); see also Sweet-Springs v. Dep't of Children and Families, 2013 WL 3043644, at *5-6 (D.N.J. June 17, 2013) (finding predecessor to NJDCPP protected by Eleventh Amendment sovereign immunity); Pena v. Div. of Child & Family Servs., 2010 WL 3982321, at *4 (D.N.J. Oct. 8, 2010) (same); Simmerman v. Corino, 804 F. Supp. 644, 650 (D.N.J. 1992) (same); New Jersey Div. of Youth & Family Servs. v. D.C., 571 A.2d 1295, 1299 (N.J. 1990) (same).

18. Certain defenses may also hinge upon the determinations being adjudicated in the Superior Court case. Plaintiffs sue the individual case workers and police officers involved in the removal of the children. New Jersey law, however, exempts from liability police officers and "designated employee[s] of the division" who assist in the removal of a child from the home. See N.J.S.A. § 9:6-8.29 ("Any person or institution acting in good faith in the removal or keeping of a child pursuant to this section shall have immunity from any liability, civil or criminal, that might otherwise be incurred or imposed as a result of such removal or keeping.") This federal court could not assess whether such "good faith" immunity is available to the individual defendants herein without repeating the adjudication being performed in the state court, which again counsels for abstention because of the identity of the issues with the merits of the Superior Court case.

19. **Conclusion.** In sum, and for the foregoing reasons, the Complaint will be dismissed for lack of jurisdiction under the "domestic relations" exception, and alternatively due to abstention under <u>Younger</u>.[4] The accompanying Order will be entered.

September 5, 2018
Date

s/ Jerome B. Simandle
JEROME B. SIMANDLE
U.S. District Judge

---

[4] Plaintiff Kindra O'Bryant's suggestion, in her letter of September 3, 2018, that her letter be deemed a request for injunctive relief under Fed. R. Civ. P. 65 [<u>see</u> Docket Item 43] is like dismissed for lack of jurisdiction. Also, to the extent Plaintiff now claims that the State Court or the NJDCPP Defendants are denying her children certain benefits under Title IV of the Social Security Act, that matter is not reviewable in this Court unless there has be en a final determination of the Commissioner of the Social Security Administration denying such benefits in whole or in part, pursuant to the relevant provision of 42 U.S.C. § 405(g). Therefore, the Court lacks jurisdiction to address any claim that Social Security Title IV benefits have been denied unless and until Plaintiff obtains and timely appeals from a final decision of the Commissioner of the Social Security Administration.