**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

KINDRA O'BRYANT, BRIAN
FLANDERS, and ARTIE PEOPLES,

        Plaintiffs,

    v.

THE NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY, et al.,

        Defendants.

1:17-cv-7752-NLH-AMD

**OPINION**

---

<u>**APPEARANCES**</u>:

KINDRA O'BRYANT
1320 CHASE STREET
CAMDEN, NJ 08104

BRIAN FLANDERS
1320 CHASE STREET
CAMDEN, NJ 08104

ARTIE PEOPLES
1214 N. 33RD STREET
CAMDEN, NJ 08105

    *Plaintiffs appearing <u>pro se</u>[1]*

---

[1] As previously noted in the Court's February 22, 2021 Opinion
[Dkt. No. 68], it has been represented to the Court that even
though O'Bryant and Flanders resided together when this matter
was filed, they no longer live in the same home.  Thus, based on
the certificate of service filed by Camden County Sheriff
Defendants, it appears that O'Bryant now resides with her
father, her co-Plaintiff Peoples, and that Flanders now resides
in Wildwood, New Jersey.  <u>See</u> Certificate of Service [Dkt. No.
70-3].  As was the case in the Court's prior opinion, it appears
that O'Bryant and Flanders have failed to update the Court with
their correct address.  <u>See</u> L. Civ. R. 10.1(a) (directing that

HOWARD LANE GOLDBERG
KRISTA SCHMID
OFFICE OF CAMDEN COUNTY COUNSEL
520 MARKET STREET
COURTHOUSE, 14TH FLOOR
CAMDEN, NJ 08102

> *On behalf of Defendants Camden County Sheriff Gilbert*
> *"Whip" Wilson, Sheriff Deputy T. Nichols, and Sheriff*
> *Deputy Gurkin*

**HILLMAN**, **District Judge**

This matter is before the Court on Defendants Camden County Sheriff Gilbert "Whip" Wilson, Sheriff Deputy T. Nichols, and Sheriff Deputy Gurkin's (collectively the "Camden County Sheriff Defendants" or "Defendants") renewed motion to dismiss Plaintiff's Complaint, [Docket Number 70], pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiffs Kindra O'Bryant, Brian Flanders, and Artie Peoples (collectively "Plaintiffs") oppose the motion.

The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Civil Rule 78.1. For the reasons expressed below, Defendants' motion will be granted.

## I.   FACTUAL AND PROCEDURAL HISTORY

The Court provided a detailed outline of the factual and

---

litigants have an affirmative duty to inform the Court of their current address and to inform the Court of any changes within seven days, and if a litigant fails to do so, the complaint is subject to being stuck by the Clerk).

procedural history of this case in its September 5, 2018
Memorandum Opinion and Order [Dkt. Nos. 44 and 45 respectively],
originally dismissing the case with prejudice, and its February
22, 2021 Opinion and Order [Dkt. Nos. 68 and 67 respectively],
dismissing with prejudice Defendants (1) the New Jersey Division
of Child Protection & Permanency ("DCPP"), (2) Allison Blake,
the Commissioner of the Department of Children and Families
("DCF"), (3) Lisa Von Pier, the Assistant Commissioner of DCPP,
(4) Lisa Capone, a DCPP Supervisor, (5) Conchita Varga, a DCPP
employee, (6) Bryant Rolls, a DCPP employee, (7) Alicia Ash, a
DCPP employee, and (8) Jonathan Garrett, a DCPP employee
(collectively the "State Defendants").  The Court assumes the
parties' familiarity with these opinions and the relevant
history; accordingly, the Court will restate only the salient
facts relevant to the instant motion for dismissal.

    This case concerns claims by Plaintiffs arising from a
state court child welfare case and the temporary removal of two
of O'Bryant's children from her custody.  O'Bryant is the mother
of three children, Flanders is the father of the youngest of
O'Bryant's children, and Peoples is O'Bryant's father and the
grandfather of all three children.  Plaintiffs allege that, on
June 6, 2017, DCPP received a call that Flanders seemed upset
and agitated when he dropped off two of O'Bryant's children at
school.  DCPP later learned that Flanders had an "endangering

3

the welfare of [a] child charge, [a] weapons charge, [an] aggravated assault on a police officer charge, [and] warrants out for his arrest."  Complaint [Dkt. No. 1.], at ¶132.  That same day, at a time when she was pregnant with Flanders' child, O'Bryant was hospitalized for injuries sustained during an attempted suicide by self-mutilation (cutting herself).  Prior to being discharged from the hospital, O'Bryant signed a Family Agreement (the "Family Agreement"), in which she agreed that Flanders would only be permitted around the children after completing a twelve-week parenting and domestic violence program.

On August 15, 2017, O'Bryant gave birth to Flanders' child at Cooper Hospital in Camden, New Jersey.  The next day, DCPP caseworkers arrived at the hospital to discuss the Family Agreement with O'Bryant.  Also present at the hospital were Peoples, Flanders, and the two older children.  While at the hospital, one of the caseworkers asked to interview O'Bryant's two older children.  Peoples refused to permit the interview and attempted to leave the hospital with the two older children.

A DCPP caseworker then summoned hospital security and Defendant Nichols, a Camden County Deputy Sheriff.  The caseworker informed Nichols of the situation, including the fact there were charges against Flanders and warrants for his arrest. Id. at ¶¶131-132.  Peoples affirmed that the caseworker wanted

4

to speak with the two children and that he was refusing to cooperate without a warrant.  Id. at ¶134.  Plaintiffs then allege that Nichols called over to another deputy (presumably Defendant Gurkin), asking for a warrant check on Flanders, which supposedly came up negative, as a result of which Nichols told Flanders there were no outstanding warrants for his arrest.  Id. at ¶133.

Peoples eventually relented and agreed to allow the caseworker to speak with the children on the condition that a Cooper Hospital security officer and Nichols would be present for the interview.  Id. at ¶¶136-37.  The caseworker then showed Nichols Dodd removal papers,[2] which, according to the Complaint, Nicholas showed to Peoples, informing Peoples that DCPP had the right to speak with the children and that DCPP would speak with the children across the street at the DCPP building.  Nichols, Peoples, Flanders, and the caseworkers then walked the children to the DCPP building.  Id. at ¶142.  While the children are escorted into the DCPP building by Nichols and the caseworkers, Peoples and Flanders waited outside.  Id. at ¶143.  Flanders was

---

[2]  As described by the Supreme Court of New Jersey, "[a] 'Dodd removal' refers to the emergency removal of a child from the home [or custody of a parent] without a court order, pursuant to the Dodd Act, which, as amended, is found at N.J.S.A. 9:6-88.21 to -8.82.  The Act was authored by former Senate President Frank J. 'Pat' Dodd in 1974."  N.J. Div. of Youth & Fam. Servs. v. P.W.R., 11 A.3d 844, 849 n.11, 205 N.J. 17, 26 n.11 (2011) (citation omitted).

later arrested by Nichols, who emerged from the building with a warrant for Flanders' arrest.  Id. at ¶145.

After waiting several hours, Peoples was told by a DCPP employee that the children would not be released to him as the children were being kept in DCPP custody.  Id. at ¶147. Plaintiffs aver this DCPP employee or security guard told Peoples that paperwork regarding the children was left with O'Bryant back at the hospital.  Id. at ¶148.  Peoples returned to O'Bryant's hospital room where she said there was no paperwork regarding DCPP's seizure of the children.  Id. at ¶149.

Peoples then returned to the DCPP building to again ask about paperwork regarding the children.  Id. at ¶150.  Failing to obtain paperwork or a satisfactory response, Peoples called the Camden County Police Department to report that his grandchildren were seized by DCPP without any documentation for the seizure.  Id. at ¶¶150-51.  The responding officers entered the DCPP building and spoke with DCPP's security staff.  Id. at ¶¶151-53.  The unnamed officers (again, possibly Gurkin, as he is otherwise not mentioned in the Complaint) informed Peoples that "there is nothing they can do" and provided him with an incident report number.

On August 18, 2017, Plaintiffs filed the instinct action seeking $10,000,000 in compensatory damages, $50,000,000 in

punitive damages, and an injunction requiring explicit instruction and policy be enacted requiring the Camden County Sheriff Defendants to refrain from abuse of process.  While the Complaint asserts six counts, the first five counts expressly concern claims against Defendants who were previously dismissed from the case.  Thus, only the sixth count is relevant here.

Specifically, the sixth count alleges the Camden County Sheriff Defendants are liable for violations of Plaintiffs' constitutional rights pursuant to 42 U.S.C. § 1983.  As concerns Nichols, the Complaint appears to center on whether his decision to escort the children from the hospital to the DCPP building (based on the information provided by the DCPP caseworker and the Dodd removal papers) violated the Plaintiffs' right to be free from "unlawful investigations" in connection with the temporary removal of the children.

Plaintiffs also claim Wilson failed to promulgate adequate rules and regulations regarding the seizure of children and further failed to instruct, discipline, and train deputies in the appropriate methods for handling and investigating allegations of child abuse in cases of exigent circumstances resulting in threats and abuse of power.  Id. at ¶224. Plaintiffs seek to hold the Defendants liable in their official and individual capacities.

On September 6, 2018, the Court dismissed the case with

7

prejudice for lack of jurisdiction under the domestic relations exception and alternatively due to abstention under Younger. The Third Circuit affirmed the dismissal of all claims for monetary damages against DCPP and the other individual State Defendants in their official capacities on the grounds of Eleventh Amendment sovereign immunity.  On November 4, 2020, the case was reinstated for the remaining claims.  On February 22, 2021, the Court issued an Opinion and Order dismissing the State Defendants with prejudice, finding them entitled to qualified immunity.  On June 12, 2021, the Camden County Sheriff Defendants filed the instant motion to dismiss.

## II.  **DISCUSSION**

### A.  **Jurisdiction**

As Plaintiffs' claims are brought pursuant to 42 U.S.C. § 1983, the Court has original subject matter jurisdiction over this matter because it arises under the laws of the United States, raising a federal question.  28 U.S.C. § 1331.

### B.  **Legal Standard**

It is well settled that a pleading must be "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief

above the speculative level[.]"  Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 555 (2007) (internal citations omitted).

In addition, when considering a motion to dismiss a
complaint for failure to state a claim upon which relief can be
granted, a court must accept all well-pleaded allegations as
true and view them in the light most favorable to the plaintiff.
Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well
settled that a pleading is sufficient if it contains "a short
and plain statement of the claim showing that the pleader is
entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to
dismiss does not need detailed factual allegations, a
plaintiff's obligation to provide the 'grounds' of his
'entitle[ment] to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a
cause of action will not do . . . ."  Twombly, 550 U.S. at 555
(alteration in original) (citations omitted) (first citing
Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of
Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994);
and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must
take three steps: (1) the court must take note of the elements a
plaintiff must plead to state a claim; (2) the court should
identify allegations that, because they are no more than

9

conclusions, are not entitled to the assumption of truth; and
(3) when there are well-pleaded factual allegations, a court
should assume their veracity and then determine whether they
plausibly give rise to an entitlement for relief.  Malleus v.
George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v.
Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations,
quotations, and other citations omitted)).

"[W]hen a complaint adequately states a claim, it may not
be dismissed based on a district court's assessment that the
plaintiff will fail to find evidentiary support for his
allegations or prove his claim to the satisfaction of the
factfinder."  Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v.
Rhoades, 416 U.S. 232, 236 (1974)).  Thus, a court asks "not
whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claim."
Id. (quoting Scheuer, 416 U.S. at 236).

"A motion to dismiss should be granted if the plaintiff is
unable to plead 'enough facts to state a claim to relief that is
plausible on its face.'"  Malleus, 641 F.3d at 563 (quoting
Twombly, 550 U.S. at 570); see also Fowler v. UPMC Shadyside,
578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provide[d] the
final nail in the coffin for the 'no set of facts' standard that
applied to federal complaints before Twombly.").  "The
plausibility standard is not akin to a 'probability

10

requirement,' but it asks for more than a sheer possibility that a [party] has acted unlawfully." Iqbal, 556 U.S. at 678.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). It is ultimately the defendant, however, that bears the burden of showing that no claim has been presented. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

In addition, the Court must be mindful towards pro se pleadings. In particular, pro se complaints must be construed liberally, and all reasonable latitude must be afforded to the pro se litigant, Estelle v. Gamble, 429 U.S. 97, 107 (1976), but pro se litigants "must still plead the essential elements of [their] claim and [are] not excused from conforming to the standard rules of civil procedure." McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); see also Sykes v. Blockbuster Video, 205 F. App'x 961, 963 (3d Cir. 2006) (holding that pro se plaintiffs are expected to comply with the Federal Rules of Civil Procedure).

**C.   Analysis**

As noted above, Plaintiff's only remaining claim is against
the Camden County Sheriff Defendants, asserting a cause of
action under 42 U.S.C. § 1983 for assisting the DCPP caseworkers
in removing the children to the DCPP building for interviews.
Defendants claim the Complaint fails to state a claim as they
are entitled to qualified immunity, just as the Court previously
found for the State Defendants.

Not surprisingly, the Court's analysis of this last
remaining claim largely turns on the same reasoning as the
Court's February 22, 2021 Opinion, which dismissed Plaintiff's
claims against the State Defendants after finding qualified
immunity barred most of Plaintiffs' claims.  Substantially, for
the reasons expressed in that Opinion, which the Court
incorporates here, the Court finds that the Camden County
Sheriff Defendants are entitled to qualified immunity and the
claims against them in their individual capacities must be
dismissed.

Section 1983 provides in pertinent part, "[e]very person
who, under color of any statute, ordinance, regulation, custom,
or usage, of any State or Territory, subjects, or causes to be
subjected, any citizen of the United States or other person
within the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the Constitution

12

and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." "By its terms, of course, [§ 1983] creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color 9 of state law." Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993). For claims asserted against persons acting under the color of state law, such as the Defendants here, the qualified immunity doctrine governs the analysis. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (quoting _, 475 U.S. 335, 341 (1986)). To overcome a defendant's qualified immunity shield, a plaintiff must plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was

13

"clearly established" at the time of the challenged conduct.

al-Kidd, 563 U.S. at 735 (citation omitted).  Lower courts have

discretion to decide which of the two prongs of qualified

immunity analysis to tackle first.  Id. (citing Pearson v.

Callahan, 555 U.S. 223, 236 (2009)).

     "The dispositive point in determining whether a right is

clearly established is whether a reasonable officer in the same

situation clearly would understand that his actions were

unlawful."  Morillo v. Torres, 222 N.J. 104, 118, 117 A.3d 1206,

1214 (2015); Reiche v. Howards, 566 U.S. 658, 664 (2012)

(holding that a right is clearly established when the law is

"sufficiently clear that every reasonable official would have

understood that what he [or she] is doing violates that

right.").  "In other words, 'existing precedent must have placed

the statutory or constitutional question' confronted by the

official 'beyond debate.'"  Id. (quoting al-Kidd, 563 U.S. 731,

741 (2011)); see also White v. Pauly, 580 U.S. 73, 137 S. Ct.

548, 551 (2017) ("While this Court's case law do[es] not require

a case directly on point for a right to be clearly established,

existing precedent must have placed the statutory or

constitutional question beyond debate.") (internal quotations

omitted) (citation omitted).

     Qualified immunity "shields an officer from suit when [he

or she] makes a decision that, even if constitutionally

deficient, reasonably misapprehends the law governing the circumstances [he or she] confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (citing Saucier v. Katz, 533 U.S. 194, 206 (2001) (stating that qualified immunity operates "to protect officers from the sometimes 'hazy border between excessive and acceptable force'")). There is a "longstanding principle that 'clearly established law' should not be defined "'at a high level of generality.'" White, 137 S. Ct. at 552 (quoting al-Kidd, 563 U.S. at 742). Rather, "the clearly established law must be 'particularized' to the facts of the case." Id. (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "Otherwise, [p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." Id. (alterations in original) (citation omitted). One final caveat regarding qualified immunity is that the defense only protects against claims against officers and other public officials in their individual capacities and not their official capacities. Stanziale v. Cnty. of Monmouth, 884 F. Supp. 140, 144-45 (D.N.J. 1995).

Here, Defendants argue the temporary removal of the children under the circumstances alleged in the Complaint entitles Defendants to qualified immunity. Defendants present two bases for their argument. First, Defendants contend that

15

Plaintiffs' allegations do not state a case for violations of a
"clearly established" right.  And second, Defendants claim there
are no allegations to show that any constitutional or statutory
right was violated.  As for the arguments presented, the Court
need only address the first line of reasoning, as it alone
sufficiently supports dismissal under qualified immunity.

     In evaluating the same allegations that give rise to count
six, the Court's February 22, 2021 Opinion plainly found
Plaintiffs are unable to demonstrate a "clearly established"
right was violated.  The Court's prior ruling centered on the
Third Circuit's analysis in Mammaro v. New Jersey Div. of Child
Protection and Permancy, 814 F.3d 164, 166-71 (3d Cir. 2016),
which found that, although "the Due Process Clause of the
Fourteenth Amendment protects the fundamental right of parents
to make decisions concerning the case, custody, and control of
their children," and from this fundamental right flows certain
procedural due process rights for parents when a government
entity seeks to deprive them permanently of custody, "no Supreme
Court precedent clearly establishes that [the child]'s temporary
removal from her mother's custody violated substantive due
process."  Id. at 170.

     As this Court noted, "the allegations in Mammaro and those
asserted by Plaintiffs in this case are analogous," thus the
Complaint fails to allege the violation of a clearly established

16

right and the Camden County Sheriff Defendants are entitled to
qualified immunity just as were the State Defendants.  February
22, 2021 Opinion [Dkt. No. 68] at 18 ("The DCPP defendants are
entitled to qualified immunity for their actions alleged by
Plaintiffs.  As the Third Circuit found in Mammaro, there is no
Supreme Court precedent that clearly establishes O'Bryant's
children's temporary removal from her custody violates
substantive due process.  Moreover, as directly evidenced by the
facts in Mammaro, there is no consensus in the case law that
temporarily removing O'Bryant's children was an unconstitutional
interference with the parent-child relationship under the
circumstances alleged in Plaintiffs' complaint.").

    Plaintiffs argue that children cannot be removed from their
parents absent exigent circumstances.  However, the record
demonstrates such circumstances were present to justify the
Defendants' actions.  As set forth in the Court's prior Opinion,
the record shows that: (1) Flanders was upset and agitated when
dropping O'Bryant's children off at school; (2) DCPP discovered
that Flanders, who lived with O'Bryant and her two children, had
a documented history of child abuse and a violent criminal
record, which included endangering the welfare of a child,
weapons, and aggravated assault on a police officer; (3) DCPP
discovered O'Bryant had attempted suicide while pregnant; (4)
O'Bryant willingly entered into a contract, the Family

Agreement, whereby she agreed that in order to keep custody of
her children, Flanders would not live with her children until
after he completed parenting and domestic violence programs; (5)
DCPP learned that O'Bryant's children were living with her and
Flanders, and the two Plaintiffs were at the hospital together
with the children when O'Bryant gave birth to Flanders' child;
and (6) the DCPP caseworkers provided Nichols with a Dodd report
concerning such details and discussed the situation with Nichols
informing him of DCPP's entitlement to interview and protect the
children.

Thus, in consideration of all these facts and
circumstances, it is evident that Nichols' actions (and the
other Camden County Sheriff Defendants) did not constitute "an
arbitrary abuse of government power that shocks the conscience."
Mammaro, 814 F.3d 170-71.  There is nothing suggested by
Plaintiffs that Nichols, Wilson, or Gurkin had any reason to be
put on notice that their conduct and policies violated
substantive due process.  Accordingly, the Court finds that
qualified immunity bars Plaintiffs' claims against Defendants in
their individual capacities.

In addition to qualified immunity, the Court also finds
that dismissal is appropriate for Plaintiffs' claims against
Gurkin, Nichols, and Wilson in their official capacities because
the Complaint fails to comply with Federal Rule of Civil

Procedure 8 and ultimately fails to state a claim against them.

As noted above, Rule 8 requires Plaintiffs' Complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Even liberally construing the Complaint, Plaintiffs fail to provide fair notice of the grounds on which they intend to rest their claims against Gurkin, who, beyond the case caption, is not even mentioned or identified in the Complaint.  Although the Complaint provides an overview of events that occurred on August 16, 2017, it contains no factual allegations specific to Gurkin. As a result, the Court and Gurkin are unable to discern which allegations apply to him individually.

Similarly and perhaps relatedly, the Complaint notes that Nichols called a deputy and that Camden County Police responded to Peoples' call, but the Complaint does not define who these individuals are.  This is a form of impermissible group pleading.  Szemple v. Rutgers Univ., No. 19-13300, 2021 U.S. Dist. LEXIS 32899, at *7 (D.N.J. Feb. 22, 2021) ("This group pleading is prohibited") (citing Galicki v. New Jersey, No. 14-169, 2015 U.S. Dist. LEXIS 84365, at *8 (D.N.J. June 29, 2015)). It is a basic pleading requirement that "[a] plaintiff must allege facts that 'establish each individual [d]efendant's liability for misconduct alleged.'"  Id. (quoting Galicki, 2015 U.S. Dist. LEXIS 32899, at *8.

19

Furthermore, Plaintiffs have failed to identify any policy to support their Monell claims against Defendants in their official capacities.  Claims against officers in their official capacities are the functional equivalent of a claim against the municipality or public entity that employs them, as the claim is truly against the city or municipality.  See Kentucky v. Graham, 473 U.S. 159, 167 (1985).  Government entities or municipalities may be liable for their agents' actions upon a demonstration that a policy or custom of the municipality caused, or was a "moving force" behind, the alleged violation of the Plaintiffs' rights.  Id. at 166 (citation omitted.  To demonstrate a Monell claim, "[a] plaintiff must identify the challenged policy, attributed to the city itself, and show a causal link between execution of the policy and the injury suffered."  Losch v. Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984).

Therefore, under the present circumstances, Plaintiffs may sue the Camden County Sheriff Defendants in their official capacities under § 1983 theory of liability only for acts implementing an official policy, practice, or custom.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-94 (1978).  Again, to plausibly plead Monell liability, a plaintiff must identify the challenged policy or custom, attribute it to the municipality itself, or in this case, a policy established or implemented by Wilson, and show a causal

20

link between execution of the policy and the injury

suffered.  Harley v. City of New Jersey City, No. 16-5135, 2017

WL 2774966, at *7-8 (D.N.J. June 27, 2017).

In addition, where the identified "policy concerns a

failure to train or supervise municipal employees," as is

alleged in the instant case, "liability under § 1983 requires a

showing that the failure amounts to 'deliberate indifference' to

the rights of persons with whom those employees will come into

contact."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d

Cir. 2014).  Deliberate indifference is a "stringent standard of

fault, requiring proof that a municipal actor disregarded a

known or obvious consequence of his action."  Id. at 223.

Ordinarily, "[a] pattern of similar constitutional violations by

untrained employees" is necessary "to demonstrate deliberate

indifference for purposes of failure to train."  Id.

"Additionally, 'the identified deficiency in a city's training

program must be closely related to the ultimate injury;' or in

other words, 'the deficiency in training [must have] actually

caused' the constitutional violation."  Id. at 222 (quoting City

of Canton v. Harris, 489 U.S. 378, 391 (1989)).

Here, the Complaint identifies Wilson and the Camden County

Sheriff's Department (which is not named as a Defendant) as

responsible for promulgating and enforcing rules, policies, and

regulations regarding child abuse investigations, but the

21

Complaint fails to note any specific policy, procedure, or rule that undergirds the action as a violation of Plaintiffs' rights. The Complaint vaguely claims the existence of a policy or custom allowing deputies to commit "abuse of process," yet there is nothing further plead to substantiate this bald assertion. Accordingly, a thorough review of the Complaint shows Count Six is merely a collection of bare conclusions against Wilson and the Camden County Sheriff's Department (and by extension Gurkin and Nichols for supposedly following this unnamed policy), which is insufficient to state a claim for relief. Id. (citing Kaplan v. Holder, No. 14-1740, 2015 U.S. Dist. LEXIS 33376, 2015 WL 1268203, at *4 (D.N.J. Mar. 18, 2015) (citing Iqbal, 556 U.S. at 678)).

More particularly, beyond these blank averments, there is nothing tying Defendants, and particularly Wilson and Gurkin to the action.  See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (holding that dismissal was appropriate because pro se plaintiff's Complaint failed to allege the individual defendant was personally involved in the alleged unlawful act, nor did the Complaint include "even a remote suggestion that [the individual defendant] had contemporaneous, personal knowledge of the [alleged unlawful act] and acquiesced in it.").  Thus, Plaintiffs provide no reasonable basis to support a finding that a Camden County Sheriff's Department policy, practice, or custom

led to a deprivation of Plaintiffs' constitutional rights.  The
Complaint is absent of facts establishing the existence of an
unconstitutional policy; the execution of that policy caused
Plaintiffs' deprivation of rights; and a connection between that
conduct and the deputies' actions in aiding the DCPP
caseworkers' removal of O'Bryant's children.

For these reasons, the Complaint in its current form "would
not provide any meaningful opportunity to [Defendants] to
decipher or answer the vague allegations levied against them."
Johnson v. Koehler, No. 18-807, 2019 U.S. Dist. LEXIS 42006, at
*8 (M.D. Pa. Mar. 15, 2019); see Twombly, 550 U.S. at 555.
Consequently, even if the Court were not to grant dismissal
under qualified immunity, the Court is compelled to disregard
the Complaint's "naked assertions devoid of further factual
enhancement," Iqbal, 556 U.S. at 678, and dismiss the Complaint
against the Defendants for failure to state a claim and for
failure to comply with Rule 8.  See Szemple, 2021 U.S. Dist.
LEXIS 32899, at *9 (dismissing pro se Plaintiff's complaint for
failure to comply with Rule 8 and failure to state a claim where
Plaintiff failed to refer to Defendants individually and provide
them fair notice of the grounds on which he intends to rest his
claims).

In sum, Plaintiffs' claims against Defendants in their
individual capacities will be dismissed with prejudice.

Dismissal of Plaintiffs' claims against Defendants in their official capacities will be without prejudice.  Plaintiff will be granted leave to file an Amended Complaint within thirty (30) days of this Opinion and accompanying Order that cures the aforementioned pleading deficiencies if they are able to do consistent with Federal Rule of Civil Procedure 11.  See Denton v. Hernandez, 504 U.S. 25, 34 (1992) (holding that a *pro se* plaintiff should receive leave to amend to address the inadequacies of his/her complaint unless such amendment would be futile or inequitable); see also LaGuardia v. Ross Twp., 705 F. App'x 130, 132 n.6 (3d Cir. 2017) (holding that "leave to amend pleadings should be freely granted unless the curative amendment would be 'inequitable, futile, or untimely'") (quoting Alston v. Parker, 363 F.3d 229, 235-36 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile")).

## III.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants Rule 12(b)(6) motion will be granted.  An appropriate Order will follow.


Date: <u>August 11, 2022</u>              <u>s/ Noel L. Hillman</u>
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.